JOHN R GRELE, State Bar No. 167080
Law Offices of John R. Grele
1 Blackfield Dr., #158
Tiburon, CA 94920
Phone: (415) 888-8912
Fax: (415) 484-7003
Email: jgrele@earthlink.net

Attorney for JOSE ARNALDO RODRIGUES

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| JOSE ARNALDO RODRIGUES, | CASE NO. 4:96-cv-01831-CW |
| Petitioner, | |
| v. | |
| W.L. MONTGOMERY, Warden, | **PETITIONER'S REPLY RE PROCEDURAL DEFAULT, DISCOVERY AND AN EVIDENTIARY HEARING** |
| Respondent. | |

# TABLE OF CONTENTS

A.    All Claims are Fully Exhausted, and Respondent has Waived Exhaustion ............ 2

    1.       Incorporation by Reference .......................................................... 4

    2.       Alleged Substantive Exhaustion ................................................. 5

B.    None of the Alleged Procedural Bars Preclude this Court's Review ...................... 7

    1.       Contemporaneous Objection Bar ............................................. 10

    2.       Failure to Raise Claim 5 on Appeal ......................................... 18

    3.       Timeliness Bar ........................................................................ 21

    4.       California's Successor Bar Was Neither Adequate nor Independent at the Time of Mr. Rodrigues' Alleged Default ........................... 23

    5.       The State Court's Postcard Denial that Some Claims were Raised Previously is not a Bar to Federal Court Review. ....................... 30

    6.       Cause and Prejudice ............................................................... 32

C.    Mr. Rodrigues is Entitled to Relief, or a Hearing and Discovery ........................ 33

    1.       Claims 1 and 3: Trial While Mentally Incompetent and Counsel Ineffectiveness .................................................................... 38

    2.       Claim 4 – Juror Misconduct ................................................... 48

    3.       Claim 5 – Discrimination in Jury Selection ............................... 51

    4.       Claims 9, 10, 14, 20 and 21 ...................................................... 52

D.    Discovery and a Hearing are Appropriate ......................................................... 52

E.    Conclusion……………………………………………………….…………….53

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aiken v. Spalding,* 841 F.2d 881, 883 (9th Cir. 1988) ................................................ 6

*Ashmus v. Calderon*, 31 F. Supp. 2d 1175, 1189 n. 27 (N.D. Cal. 1998) ............... 9

*Bennett v. Mueller*, 322 F.3d 573 (9th Cir. 2003) ............................ 2, 8, 10, 21, 22

*Bonin v. Calderon*, 59 F.3d 815, (9th Cir.1995) ..................................................... 13

*Calderon v. District Court* (*Hayes*), 103 F.3d 72 (9th Cir. 1996)......................... 19

*Cannedy v. Adams*, 706 F.3d 1148 (9th Cir. 2013) ................................................. 37

*Carpenter v. Ayers*, 548 F.Supp.2d 736 (N.D.Cal.2008) ....................................... 30

*Cone v. Bell*, 129 S. Ct. 1769 (2009) ........................................................................ 30

*Cullen v. Pinholster*, 131 S. Ct. 1388 (2011) .................................................... 3, 34

*Davis v. Woodford*, 384 F.3d 628 (9th Cir. 2004)................................................... 15

*Deere v. Cullen*, 718 F.3d 1124 (9th Cir. 2013)...................................................... 47

*Deere v. Woodford,* 339 F.3d 1084 (2003)............................................................... 44

*Dennis v. Brown*, 361 F. Supp. 2d 1124 (N.D. Cal. 2005).......................... 8, 21, 29

*Douglas v. Alabama*, 380 U.S. 415, 422 (1965) ....................................................... 9

*Fairbank v. Ayers*, 650 F.3d 1243, 1256 (9th Cir. 2011) ....................................... 14

*Featherstone v. Estelle*, 948 F.2d 1497 (9th Cir.1991) .......................................... 14

*Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007) ............................................... 49

*Fields v. Calderon*, 125 F.3d 757 (1997) ................................................................ 21

Ford v. Georgia, 498 U.S. 411 (1991)................................................................. 7, 16

*Gaston v. Palmer*, 417 F.3d 1030 (9th Cir. 2005)..............................................35, 45

*Harrington v. Richter*, 131 S.Ct. 770 (2011)..........................................................36

*Hernandez v. Ylst*, 930 F.2d 714 (9th Cir.1991).....................................................43

*Hibbler v. Benedetti*, 693 F.3d 1140 (9th Cir.2012) ..............................................38

*Hill v. Roe*, 321 F.3d 787 (9th Cir. 2003)...............................................................30

*Hines v. Enomoto*, 658 F.2d 667 (9th Cir.1981) .....................................................14

*Hull v. Kyler*, 190 F.3d 88 (3d Cir.1999) ...............................................................47

*Humphrey v. Cady*, 405 U.S. 504 (1972) ..................................................................6

*ITSI T.V. Prods., Inc. v. Agric. Assocs.*, 3 F.3d 1289 (9th Cir.1993) .....................45

*Inthavong v. Lamarque*, 420 F.3d 1055 (9th Cir. 2005) .........................................13

*Jackson v. Giurbino*, 364 F.3d 1002 (9th Cir. 2004) ..............................................13

*James v. Ryan*, 679 F.3d 780 (9th Cir. 2012)...........................................................52

*Jermyn v. Horn*, 266 F.3d 257 (3d Cir.2001) ..........................................................47

*Kim v. Villalobos*, 799 F.3d 1317 (9th Cir. 1986) ...................................................35

*La Crosse v. Kernan*, 244 F.3d 702 (9th Cir. 2001).................................................25

*Martinez v. Ryan*, 132 S.Ct. 1309 (2012)..........................................................32, 52

*McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548 (1984).............48, 49

*McMurtrey v. Ryan,* 539 F.3d 1112 (9th Cir.2008).................................................41

*Melendez v. Pliler*, 288 F.3d 1120 (9th Cir. 2002).......................................11, 14, 15

*Morales v. Calderon*, 85 F.3d 1387 (9th Cir.1996)...........................17, 18, 19, 21

*Moran v. Godinez*, 57 F.3d 690 (9th Cir.1994)........................................................41

*Odle v. Calderon,* 884 F.Supp. 1404 (N.D. Cal. 1995)................................................ 2

*Odle v. Woodford*, 238 F.3d 1084 (9th Cir. 2001) ............................................ 43, 44

*Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000).......................... 11, 18, 19

*Pate v. Robinson*, 383 U.S. at 384 (1966) .................................................. 41, 44, 46

*Paulino v. Castro*, 371 F.3d 1083 (9th Cir.2004) .................................................. 17

*Perez v. Rosario*, 459 F.3d 943 (9th Cir. 2006) .................................................... 38

*Rhines v. Weber*, 544 U.S. 269 (2005) ................................................................... 3

*Rich v. Calderon*, 187 F.3d 1064 (9th Cir.1999)................................................... 13

*Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285 (9th Cir.1985)...... 12, 15, 22

*Schriro v. Landrigan*, 550 U.S. 465 (2007)........................................................... 35

*Taylor v. Maddox*, 366 F.3d 992 (9th Cir. 2004). .................................................. 41

*United States v. Givens*, 767 F.2d 574, 579 (9th Cir. 1985) .................................. 21

*United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33 (1952) ..................... 12

*Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002). .............................................. 19

*Vansickel v. White*, 166 F.3d 953, 957–58 (9th Cir.1999) ..................................... 14

*Walker v. Martin*, 131 S.Ct. 1120 (2011)............................................... 9, 21, 22, 23

*Williams v. Woodford*, 384 F.3d 567 (9th Cir.2002).............................................. 44

*Wood v. Milyard*, 132 S.Ct. 1826 (2012) ........................................................... 2, 3

*Ylst v. Nunnemaker*, 501 U.S. 797 (1991) ............................................................. 13

## STATE CASES

*In re Clark*, 5 Cal.4th 750 (1993)........................................................ 9, 23, 25, 26

*Dixon*, 41 Cal.2d 756 (1953) ........................................................................... 18

*Hale v. Morgan*, 22 Cal.3d 388 P.2d 512 (1978) ..................................................... 12

*In re Harris*, 5 Cal.4th 813 (1993) ......................................................................... 20

*In re Miller*, 17 Cal.2d 734 (1941) ......................................................................... 31

*People v. Abbott*, 47 Cal.2d 362 (1956) .................................................................. 13

*People v. Allen*, 41 Cal.App.3d 196 (1974) ............................................................. 12

*People v. Bonin*, 47 Cal.3d 808 (1989) ................................................................... 13

*People v. Cahill*, 5 Cal.4th 478 (1993) .................................................................... 11

*People v. Chambers*, 231 Cal.App.2d 23 (1964) ...................................................... 12

*People v. Duvall*, 9 Cal.4th 464 (1995). .................................................................. 34

*People v. Frank*, 38 Cal. 3d 711 (1985) ................................................................... 11

*People v. Norwood*, 26 Cal.App.3d 148 (1972) ....................................................... 12

*People v. Pennington,* 66 Cal.2d 508 (1967) ..................................................... 41, 44

*People v. Rodrigues,* 8 Cal.4th 1060 (1995) ....................................... 16, 41, 42, 46

*People v. Scott*, 21 Cal.3d 284 (1978) ..................................................................... 13

*People v. Simon*, 80 Cal.App. 675 (1927) ............................................................... 12

*People v. Stankewitz*, 32 Cal.3d 80 (1982) ....................................................... 39, 42

*People v. Underwood*, 61 Cal.2d 113 (1964) ........................................................... 12

*People v. Wader,* 5 Cal.4th 610 (1993) .................................................................... 16

*In re Reno*, 55 Cal.4th 428 (2012) .................................................................... 21, 27

*In re Robbins*, 18 Cal.4th 770 (1998) ........................................... 9, 21, 23, 25, 27

*Sanders*, 21 Cal.4th at 717-19 (1999)......................................................................23

## DOCKETED CASES

*In re Bittaker* (Lawrence), No. S052371 (Nov. 29, 2000) ..........................29

*In re Cain* (Tracy), No. S067172 (Jun. 28, 2000) .....................................29

*In re Clark* (Richard), No. S060797 (Aug. 13, 1998) ...............................28

*In re Crittenden* (Steven), No. S060706 (Aug. 18, 1999) .........................28

*In re Edwards* (Thomas), No. S092074 (Nov. 15, 2000).........................29

*In re Espinoza* (Antonio), No. S062244 (Feb. 17, 1999) ..........................28

*In re Hamilton* (Michael), No. S040799 (May 6, 1999) ...........................28

*In re Hawkins* (Jeffrey), Case No. S065450 (Mar. 9, 1999) ....................29

*In re Jackson* (Noel), Case No. S070227 (June 3, 1999) .........................29

*In re Johnson* (Laverne), Case No. S077521 (Apr. 14, 1999) .................29

*In re Jones* (Earl), Case No. S073227 (Feb. 23, 2000) ...........................29

*In re Nicolaus* (Robert), No. S060675 (Jan. 17, 2001) ............................28

*In re Osband* (Lance), No. S063051 (Oct. 28, 1998)................................28

*In re Raley* (David), No. S053603 (Aug. 19, 1998) ..................................28

*In re Sanders* (Ronald), No. S082022 (Sep. 22, 1999) ............................29

*In re Turner* (Melvin), Case No. S069718 (Dec. 13, 2000)......................29

*In re Visciotti* (John), No. S074291(Feb. 24, 1999)..................................28

## FEDERAL STATUTES

28 U.S.C.§2254 ................................................................................. 3, 35

Fed.R.Civ.P. 8(b) ............................................................................................ 33, 34

**STATE STATUTES**

Cal.Pen.Code §1368 ....................................................................................... 43, 46

JOHN R GRELE, State Bar No. 167080
Law Offices of John R. Grele
1 Blackfield Dr., #158
Tiburon, CA 94920
Phone: (415) 888-8912
Fax: (415) 484-7003
Email: jgrele@earthlink.net

Attorney for JOSE ARNALDO RODRIGUES

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| JOSE ARNALDO RODRIGUES, | CASE NO. 4:96-cv-01831-CW |
| Petitioner, | |
| v. | |
| W.L. MONTGOMERY, Warden, | **PETITIONER'S REPLY RE PROCEDURAL DEFAULT, DISCOVERY AND AN EVIDENTIARY HEARING** |
| Respondent. | |

Petitioner, Jose Rodrigues, through his appointed counsel, sought discovery and an evidentiary hearing.   Respondent has opposed, and invokes several procedural defaults.   (Doc. #354, hereafter "Opposition" or "Opp.").   Mr. Rodrigues offers this Reply.

Respondent's Opposition is frustratingly familiar.  This is the second time the Court has pressed for identification of claims or facts that are barred and

Respondent remains unwilling to do so. Its complaint that "allegations" are unexhausted (Opp., at 2-3), references several other pleadings, in particular its Answer, which does not itself identify any specifics (Doc. 354, at 4-5). Its briefing on procedural default is similarly vague, complaining that "several" of the claims are barred "in whole or in part", without identifying what those are. (Opp., at 4). This is a reprise of the expensive and time-consuming effort the Court made to have Respondent properly articulate its position years ago (Doc. 238), which Respondent declined (Doc. 242). It is not up to the Court or Mr. Rodrigues to do Respondent's work for it, and such conduct is clear waiver. *Wood v. Milyard*, 132 S.Ct. 1826, 1835 (2012) (waiver from declining opportunities to present a defense or claim); *Bennett v. Mueller*, 322 F.3d 573, 585–86 (9th Cir. 2003) (failure to properly articulate and defend defaults); *Odle v. Calderon,* 884 F.Supp. 1404, 1411-1412 (N.D. Cal. 1995) (waiver of procedural defense).

A.    **All Claims are Fully Exhausted, and Respondent has Waived Exhaustion**

Respondent has once again failed to specify its exhaustion allegations. In fact, it doesn't cite to a single claim that is unexhausted. (Opp., at 2-3). Instead, it references earlier pleadings the Court already found lacking, and which were the reasons for the Court's Order requiring briefing by Respondent (Doc. 238), which Respondent declined (Doc. 242). Noticeably, Respondent does not assert any *Pinholser* bar to review of any

facts alleged in the Amended Petition and exhibits in support, as pled in the Traverse. *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). Having been provided such opportunities, and having declined, Respondent has waived its defense. *Wood v. Milyard*, 132 S.Ct. 1826.

Instead, Respondent desires to hold its exhaustion arguments in reserve, first obtain a Court ruling on the merits and then, if adverse, be able to argue exhaustion. (Opp., at 4). It bases such a procedure on the statute which provides that a court may deny unexhausted claims. 28 U.S.C.§2254(b)(2). However, that statute does not alter the rules of this Court, or its orders, as to how exhaustion is to be litigated. *See* Hab. L.R. 2254(b)&(c). The reason for this is simple – if the case needs to return to state court for exhaustion, it needs to do so promptly (assuming good cause), and await a state court ruling that may decide issues before the Court. Otherwise, what results is expensive, time-consuming and potentially wasteful efforts in this Court, only to have to then return to state court and, likely, have to start anew years later.

Given Respondent's approach, should any of these claims be deemed unexhausted, Mr. Rodrigues will have little difficulty establishing good cause and the need to return to state court for yet another round of litigation. *See Rhines v. Weber*, 544 U.S. 269, 278 (2005). Should the Court adopt Respondent's approach, Mr. Rodrigues requests the opportunity to litigate whether there is good cause to return to state court and exhaust claims.

1
2          **1.      Incorporation by Reference**

3          In his Answer to the Amended Petition, Respondent asserted that Mr. Rodrigues'
4
    incorporation by reference rendered unspecified "facts and allegations" unexhausted.
5
6   (Doc. 221, at 4; hereafter "Answer" or "Ans.").  This Court rejected that argument as it

7   pertained to the same claims in the original Petition (Doc. 100 at 3-6), as Respondent

8   concedes (Ans., at 4 fn. 3).  Despite being given another chance here, Respondent merely
9
    references the Answer for his arguments and does not specifically argue the
10
11  incorporation issue. (Opp., at 2-3).  Assuming it is still part of this case (it appears to

12  have been jettisoned in Respondent's most recent pleading), Respondent has offered

13  nothing new and the Court should reaffirm its ruling.

14         When arguing against an evidentiary hearing, Respondent submits (without any
15
    citation to state authority) that the state court examines the entire record when
16
17  determining any claim within a petition.  (Opp., at 16).  If that is indeed the case, then

18  there is no merit to any exhaustion argument based on incorporation – the state court

19  conducts that analysis when determining a prima facie case.
20
21         An examination of Respondent's pleading is instructive.  One of the claims

22  Respondent identifies is Claim 11, in which Mr. Rodrigues alleges introduction of

23  videotaped evidence rendered his trial fundamentally unfair. (Ans., at 4).  In a footnote,
24
    Respondent asserted that incorporation of the Factual Introduction of the Amended
25
26  Petition and "facts and allegations" from "other (unidentified) claims" rendered Claim 11

27  unexhausted. (Ans. at 61 n. 45).  *Not a single fact or legal claim is identified*, rendering it
28

impossible for Mr. Rodrigues or the Court to figure out what Respondent is complaining about.  The same non-specific language is employed for Claim 12, Hearsay Evidence to Bolster Vargas's Identification (Ans., at 64 fn 49); Claim 13, Exclusion of Impeachment of Zavala (Ans., at 69 fn. 56); Claim 15, Factual Innocence (Ans. at 75 fn. 63); Claim 16, Re-reading of Testimony (Ans., at 81 fn 65); Claim 17, Insufficient Evidence (Ans., at 83 fn 68); Claim 18, Exclusion of Zavala Testimony of Attack (Ans., at 88, n. 75).  This impossibility to determine what was claiming to be exhausted was the reason for the Court's order (Doc. 100), which Respondent ignored.  It has done so again.[1]

### 2. Alleged Substantive Exhaustion

The Answer identifies Claims 14, 17 and 21 as containing allegations never presented to the state court. (Ans., at 4).

In its initial briefing, Respondent did not identify claims 14 and 21 as unexhausted. (Doc. 61, at 10-15).  Mr. Rodrigues and the Court relied on this non-inclusion, so exhaustion as to those claims was not litigated, nor were they offered again in state court in the second petition.[2]  Thus, Respondent waived the opportunity to complain about them, and, should exhaustion now be necessary, has waived any

---

[1] For Claim 12, Claim 13, and Claim 15, Respondent acknowledged they were contained in the second state petition, but fails to mention that petition did incorporate by reference the facts and allegations that form the bases for the Factual Introduction (which are mainly from the first state petition), as well as the other claims in both state petitions. (Doc. 222, Exhibit 173 (second state petition), at 12).  Thus, to the extent new facts and allegations are included through reference in those claims, they are exhausted.

[2] As to Claims 14 and 21, these same allegations were presented in the initial Petition, as claims 10 and 23, respectively.

REPLY- CASE NO. 4:96-CV-01831-CW

objection to returning to state court to do so.

Respondent's allegations lack merit in any event.   Respondent confuses exhaustion with a merits requirement – asserting that if the claim is meritorious, it must be unexhausted.   That is simply wrong.   *Humphrey v. Cady*, 405 U.S. 504, 516 n.18 (1972) ("question ... is whether any of petitioner's claims is so clearly distinct from the claim he has already presented to the state courts that it may fairly be said that the state courts have had no opportunity to pass on the claim.")

As to Claim 14, the failure to preserve and disclose evidence, Respondent's complaint is that the state petition said money was on Zavala's person, and the federal petition says it was in his possession when he was taken to the hospital minutes later. (Ans., at 73 fn 60).   It is hard to imagine a more picayune point. *Aiken v. Spalding,* 841 F.2d 881, 883 (9th Cir. 1988)(unexhausted only if substantially alters the nature of the claim). It is also incorrect, as both petitions use the phrases interchangeably.  *See* Amended Petition at 149 (reference to both money on the way to the hospital and "in the apartment or on Zavala's person at the time of the attack"); Exhibit 162, 1st Pet., at 126-27 (money on person during attack, missing from pockets at hospital).[3]

Respondent also incorrectly argues that Claim 14 includes an unexhausted allegation that a tire iron (used in the assault and allegedly found in Mr.

---

[3]  "Exhibit" refers to the exhibit number contained in Respondent's submission of the state court record, ECF Dkt. #222.

Rodrigues' car) was not preserved. (Ans., at 74).[4]  This allegation was plainly exhausted in the first state petition.  Exhibit 162, 1st Pet., at par. 299, p. 127.

As to Claim 17, Respondent argued that an allegation in the Amended Petition that Mr. Rodrigues suffered a conviction for attempted burglary was unexhausted.  (Ans., at 83, fn 68).  It was agreed this was clerical error as there was no such conviction.  (Doc. 238, Joint Statement, at 3).  Instead, it should read "attempted robbery" as the state court noted when it ruled on the claim.

In response to Claim 21, Respondent alleges the subpart pertaining to false testimony by Officer Gallia in the penalty phase are unexhausted. (Ans., at 109 fn 91). Those penalty phase claims are no longer at issue in this case.  Lack of exhaustion is not asserted for any other subpart of the claim.

**B.    None of the Alleged Procedural Bars Preclude this Court's Review**

Respondent does not address Mr. Rodrigues' main contention – that the bars Respondent seeks were not in effect (regularly and consistently applied) at the time of Mr. Rodrigues' trial (objection bar), and appeal and first habeas petition (remaining bars).  *See Ford v. Georgia*, 498 U.S. 411, 423–24 (1991) (state court procedural bar "must have been 'firmly established and regularly followed' by the time as of which it is to be applied") *Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir.1997). The reality is that

---

[4]  Respondent also asserts that this claim contains "a number of contentions not raised in state court" without identifying what those are. (Ans., at 74).  It is impossible to respond to such statements.

the recall election of 1986 caused a sea change in California capital jurisprudence, including waiver and defaults. Many of those changes were announced after Mr. Rodrigues' 1988 trial, yet applied to his case. Regardless, it is Respondent's burden to address this allegation and disprove it. *Bennett v. Mueller*, 322 F.3d at 585–86. It has not done so.

In fact, as will be seen, Respondent's continued failure to properly articulate what bar it seeks to apply to which allegation is a failure to properly articulate the bar, the first step required by *Bennett v. Mueller*. That should end the Court's inquiry.

It also appears that while Respondent is asserting that entire claims are procedurally barred, the reality is that its argument is that *portions* of claims are barred. For nearly all claims, most were brought on appeal and in the first habeas, and had no defaults attached to them. The defaults, if they occurred, attached to new facts being presented during the second habeas proceeding. As discussed below, Respondent has not made any effort to identify which facts those are. It has thus failed to properly articulate or defend the bar, which is its burden under *Bennett.*

Respondent has made no effort to establish that the bars were regularly and consistently applied *at the time of the alleged default.* See *Dennis v. Brown*, 361 F.Supp.2d 1124, (N.D.Cal.2005) (failed to present on appeal, timeliness, successor bars not regularly applied). And, although unnecessary for this Court to address because the bars themselves are too unclear and not adequate or independent at the time of the alleged defaults, it remains an open question whether California's bars in capital cases

are merely designed to frustrate federal review.  "[A] state procedural ground would be inadequate if the challenger shows a 'purpose or pattern to evade constitutional guarantees.'"  *Walker*, 131 S. Ct. at 1131 (citing *Beard*, 558 U.S. 53, 130 S. Ct. 612, 620, 175 L. Ed. 2d 417 (2009)(Kennedy, J., concurring)).  A state bar must serve a legitimate state interest.  *Douglas v. Alabama*, 380 U.S. 415, 422 (1965).  The state interest as announced by the state court is tied to prompt consideration and avoidance of delay.  *In Re Clark*, 5 Cal. 4th at 764, 770.  However, in capital cases (as in this case at the time), the state court also decides claims on the merits.  *Robbins*, 18 Cal. 4th at 779 n.1; *Gallego*, 18 Cal. 4th at 852 (Brown, J., conc.).  It requires briefing by the state as well.   Arthur L. Alarcón, *Remedies for California's Death Row Deadlock*, 80 S. Cal. L. Rev. 697, 742 n. 264 (2007).  Delays are even greater now than when the bars in *Clark* were discussed, and when they were further clarified in *Robbins*.  Alarcón, 80 S. Cal. L. Rev. at 742, 744.  *See also* Arthur L. Alarcón & Paula M. Mitchell, *Executing the Will of the Voters?:  A Roadmap to Mend or End the California Legislature's Multi-Billion Dollar Death Penalty Debacle*, 44 Loy. L.A. L. Rev. S41, S82-83 (Special Issue, 2011).  As noted there and elsewhere, the state court's funding mechanism itself is to blame for much of the difficulty with initial petitions.  *Ashmus v. Calderon*, 31 F. Supp. 2d 1175, 1189 n. 27 (N.D. Cal. 1998).

Given this record of merits determinations, consistently increasing delay and an ever-shifting Byzantine labyrinth of procedural structures that serve no articulated state purpose, the only reasonable conclusion is that the state court defaults do nothing but frustrate federal review.

### 1.    Contemporaneous Objection Bar

Respondent's assertion of this bar is so imprecise as to prevent any reasoned response, and precludes application by this Court.  Its Opposition merely references the Answer, and in a footnote, states "greater specificity" is contained within the specific claims in its Answer. (Opp., at 5).   The Answer identifies claims 11, 12, 13, 16, and 19 as subject to this bar "in whole or in part", without further discussion.  (Ans., at 9-10). Within the claims themselves, Respondent cuts and pastes the state court opinion, then offers its own analysis in conclusion.  (*See e.g.* Ans., at 61-64 [claim 11]).  Not once in its analysis of the state court opinion does Respondent assert a procedural default, or identify the quoted language that is the procedural bar at issue, or the "part" of the claim here to which the bar may apply.  (*See e.g.* Ans., at 64).  Because several of these claims involve subparts, each with their own discussions by the state court, some of which involve different kinds of alleged waivers that may or may not be a failure to object at trial bar, this is simply too vague an assertion of a procedural default to pass the first prong under *Bennett v. Mueller.*

More substantively, Respondent again fails to address the contours of state law at the time of trial, and what bars applied then.  This is a burden it shoulders under *Bennett*. For example, it relies on California Rule of Evidence 353.  (Opp., at 4).  However, it must be recalled that in *People v. Frank*, 38 Cal. 3d 711, 729 fn. 3 (1985), the state court reaffirmed that it was not going to apply a contemporaneous objection bar under Rule of Evidence 353 to capital case review when an objection had been made that had some alleged deficiency, an exception that had been in place since 1946.  Further, at the time of trial, Rule 353 was subject to an exception for federal due process violations. *See* Comment to Rule 353 by the Assembly Committee on Judiciary ("Section 353 is, of course, subject to the constitutional requirement that a judgment must be reversed if an error has resulted in a denial of due process of law, *People v. Matteson*, 61 Cal.2d 466, 39 Cal.Rptr. 1, 393 P.2d 161 (1964).").  Thus, the rule was not independent at the time of Mr. Rodrigues' trial. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000).[5]

Instead of addressing this case-specific analysis, Respondent offers canned briefing, string citing the instances wherein courts have applied a failure to object bar. (Opp., at 4).  It omits discussion of *Melendez v. Pliler*, 288 F.3d 1120, 1125 (9th Cir. 2002), which clearly holds that the bar is insufficient (at least as of 2002)

---

[5] *Mattson* was overruled after Mr. Rodrigues' trial. *People v. Cahill*, 5 Cal.4th 478, 510 n. 15 (1993).

to bar review when counsel does object but fails to include all bases for that objection. More critically, though, none of the cases address the question of timing – what was the law at the time of the alleged default.  This renders them inapplicable as precedent as to the main question here.  *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir.1985) (court is not bound by "unstated assumptions on non-litigated issues."); *United States v. L.A. Tucker Truck Lines, Inc*., 344 U.S. 33 (1952) (establishing doctrine).

This bar, to the extent it can be applied, was at the time of trial so riddled with exceptions as to render it inadequate, and indecipherable to any practitioner. If the due process violation is sufficiently egregious, review is permitted. *People v. Chambers*, 231 Cal.App.2d 23, 28 (1964); *People v. Underwood*, 61 Cal.2d 113, 125 (1964); *People v. Simon*, 80 Cal.App. 675, 678–79, 252 P. 758 (1927).  It will be reviewed if the matter could be raised in habeas.  *People v. Norwood*, 26 Cal.App.3d 148, 153 (1972); *People v. Allen*, 41 Cal.App.3d 196, 202 (1974) ("the constitutional question can properly be raised for the first time on appeal"); *Hale v. Morgan*, 22 Cal.3d 388, 394, 584 P.2d 512 (1978) (state supreme court acknowledging "although California authorities on the point are not uniform, our courts have several times examined constitutional issues raised for the first time on appeal.").  It will be reviewed if there is an objection, which is unclear or omits

details and grounds. *People v. Scott*, 21 Cal.3d 284, 290 (1978) ("In a criminal case, the objection will be deemed preserved if, despite inadequate phrasing, the record shows that the court understood the issue presented."); *People v. Abbott*, 47 Cal.2d 362, 372 (1956) (trial court considered motion to strike even though some matters had not previously been objected to; appellate court did not apply bar because trial court had ruled).

Further, because California imposes different forms of bars to different forms of trial procedures, it is important to determine what failure to object bar is being asserted. Respondent has not done so. Nearly all Respondent's cases involve a failure to object to procedures that are not the issue here, and which have their own set of procedural doctrines, many of them long-established. *Ylst v. Nunnemaker*, 501 U.S. 797 (1991) (failure to raise *Miranda* objection to statement); *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005)(same); *Bonin v. Calderon*, 59 F.3d 815, 842–43 (9th Cir.1995)(same)[6]; *Rich v. Calderon*, 187 F.3d 1064, 1069–70 (9th Cir.1999)(failure to object to prosecutor's closing); *Jackson v. Giurbino*, 364 F.3d 1002, 1005-1007 (9th Cir. 2004)(same);

---

[6] Reflecting the lack of litigation over adequate and independent questions in that case, the Ninth Circuit *Bonin* opinion omits discussion of what was barred by the state appellate court. The state court opinion applies a bar to review of a *Miranda* claim attached to defendant's statements. *People v. Bonin*, 47 Cal.3d 808, 845 (1989). This bar was originally imposed because failing to raise a *Miranda* violation prevented a pre-trial hearing where the state would be able to present evidence and the trial court could rule.

*Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir.1991); *Vansickel v. White*, 166 F.3d 953, 957–58 (9th Cir.1999)(failure to request peremptory challenges in non-capital case); *Hines v. Enomoto*, 658 F.2d 667 (9th Cir.1981)(same).[7] Whatever the geneses of these procedural bars, which appear much different (and more long-standing) than the ones here, the objection bar being sought here under Rule 353 is much different.

For instance, although unclear from the Answer, for Claims 11 (Vargas videotape evidence), 12 (Vargas identification) and 13 (failure to permit Zavala impeachment), Respondent may be referencing the state court's opinion that trial counsel failed to articulate constitutional bases for his objections. *See* Claim 11 (Ans., at 63-64 fn. 48); Claim 12 (Ans. at 66 fn. 51; Ans., at 67 fn. 52); Claim 13 (Ans., at 71 fn. 58). This is not a failure to object bar, but a failure to articulate certain bases in an objection. *Melendez v. Pliler,* 288 F.3d at 1125.[8] Even then, as noted in the Traverse, this is a bar erected by the state court in 1990, *after* Mr. Rodrigues' trial. As such, it cannot bar review here.

---

[7] In actuality *Vansickel* involved a state court applying a prejudice calculation for failing to object to the denial of peremptory challenges because the state rule is that if an objection is made, that requires *per se* reversal. This is not a bar to review – it just means that a prejudice showing must be made if there is no objection.

[8] In *Fairbank v. Ayers*, 650 F.3d 1243, 1256 (9th Cir. 2011), cited by Respondent, the Ninth Circuit in summary fashion applied a bar to the failure to object to the introduction of evidence of a racial slur. Again, this was a wholesale failure to object, rather than a failure to articulate constitutional bases. There appears no discussion of any *Ford* issue in that litigation.

(Traverse, at 8).  Respondent does not dispute this in its Opposition.

*Davis v. Woodford*, 384 F.3d 628, 654 (9th Cir. 2004), contained within Respondent's string citation, upheld application of a state appellate court bar for failing to include the Confrontation Clause in trial counsel's objection.  As noted above, there is no discussion in *Davis* as to whether such a bar is adequate or independent, much less when the bar was created by the state supreme court and when it was imposed.  *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d at 1288.  Further, it appears the trial was in 1990, which is when the bar was first imposed in California.  *Davis*, 384 F.3d at 656 n. 2.[9]  Mr. Rodrigues' trial was before 1990.

It is hard to imagine what Respondent is talking about with respect to Claim 16 (reading of trial testimony).  In its Answer, Respondent quotes the state court, which held that "[w]e find it unnecessary to decide the issues of waiver." (Ans., at 81).  Thus, without more explanation by Respondent, there is no bar here.

In Claim 19, Mr. Rodrigues asserts several instructional errors.  (Amend. Pet., at 162-173).  As Respondent acknowledges, portions of this claim were presented on direct appeal, but the entire claim was presented in the second state habeas.  (Ans., at 90).  Respondent also admits that the state court did not attach any failure to object bar in its ruling on this state habeas petition.  (*Id.*)  It does not articulate here what, if any, facts or

---

[9] This may explain why the panel in *Davis* didn't discuss *Melendez v. Pliler.*

allegations remain subject to whichever bar it is asserting arose from the state appellate court's decision.  Therefore, Respondent has failed to establish that a bar may apply here.

Assuming there is some bar to apply, Respondent has failed to articulate which portions of the claim are subject to it.  It appears only subpart (2) regarding conspiracy instructions is at issue.  Subpart (1) concerns the instructions on accomplice liability.  (Amend. Pet., at 162-64).  Respondent's Answer states this subclaim was addressed in the context of Claim 17.  (Ans., at 90).  No failure to object bar is asserted as to Claim 17. (Opp., at 5).  Thus, it appears subpart 1 is not included in Respondent's broad assertion of this bar.

Subparts (2) and (3) of Claim 19 involve the conspiracy instructions.  (Amend. Pet., at 164-66).  Respondent repeats verbatim the state court opinion wherein trial counsel's failure to object to the instructions (subpart 2) waived appellate review, and the portion wherein the state court nonetheless conducted that review (Ans., at 90-91), but does not assert this constitutes a procedural bar to this Court's review in that recitation or in its analysis of the claim (Ans, at 99-10).   Subpart (3), the failure to include instructions, was not subject to any bar in the state court's opinion. *People v. Rodrigues,* 8 Cal.4th 1060, 1135 (1995).

As to subpart (2), Respondent omits the state court's citation to support this bar, which was to *People v. Wader,* 5 Cal.4th 610, 658 (1993), a case *post-dating* Mr. Rodrigues' 1988 trial.  *See People v. Rodrigues,* 8 Cal.4th at 1134.  Such post-hoc bars by a state court do not preclude federal review. *Ford v. Georgia*, 498 U.S. at 423-24.

REPLY- CASE NO. 4:96-cv-01831-CW

The one federal case involving a bar to review for failing to object to instructional errors contained in Respondent's string citation is *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir.2004).   That trial was in 1997, distinguishing the case from Mr. Rodrigues'.   And, most significantly, the Ninth Circuit explicitly noted that was no effort to challenge the adequacy of the bar.   371 F.3d at 1093.   It was a non-litigated issue under *Tucker Truck*.

Further, it is not clear the state court actually applied any bar to the federal constitutional claims.   After addressing the state evidentiary issues and counsel's failure to object, the state court went on to address *separately* the federal constitutional claims, and did not attach any bar to review of those claims.   (Ans., at 91-92: "Because no error appears, we reject defendant's related claims that delivery of the conspiracy instructions violated his constitutional rights to due process, a fair trial by jury, and reliable guilt, special circumstance and penalty determinations.").   Thus, the bar is at best unclear. "[A] procedural default based on an ambiguous order that does not clearly rest on independent and adequate state grounds is not sufficient to preclude federal collateral review." *Morales v. Calderon*, 85 F.3d 1387, 1392 (9th Cir.1996).

No discussion of waiver or bar to review is clearly articulated for subpart (4), a series of adverse inference instructions applied to Mr. Rodrigues; subpart (5), instructions on mens rea; or, subpart (6), instructions on the special circumstances. (Ans., at 92-100). Although the state court on occasion chastises trial counsel for not seeking modifications, it notes counsel's objections and does not apply any bar to review.

Respondent does not assert otherwise.

2.      **Failure to Raise Claim 5 on Appeal**

Claim 5 alleges violations of Mr. Rodrigues' rights during jury selection. (Amend. Pet., at 35- 46).  It was Claim XIV in the second state petition.  Exhibit 162, at 116-137.  The state court ruled that "to the extent [claim XIV] could have been, but was not, raised on appeal, [it is] barred", citing *in re Dixon*, 41 Cal.2d 756 (1953).  Exhibit 194.  Respondent asserted this bar in its Answer, acknowledging that the Ninth Circuit precedent is to the contrary.  (Ans., at 10).  Mr. Rodrigues responded that the bar was foreclosed by that Circuit precedent, and if it weren't, the state court's invocation of this bar is too vague to apply because of its use of the "to the extent" language without identification of which aspects of the claim should have been raised on appeal. (Traverse, at 6-7, 56; *See Morales v. Calderon,* 85 F.3d at 1392 (ambiguous order precludes application of bar).  Respondent does not address this problem and merely re-asserts the bar by referencing the Answer. (Opp., at 5).  Respondent again acknowledges that *Park v. California*, 202 F.3d 1146, renders this bar unenforceable to Mr. Rodrigues' case, but nonetheless string cites a number of federal cases it alleges applied the bar.  (Opp., at 5).

Initially, Respondent misperceives the relevant default, if one exists at all. It is not when the second habeas petition was filed in 1998, but rather when the appeal was filed in 1993.  Because it involves a failure to raise a claim on appeal,

the default, if one occurred, was when the claim was not included in the Opening Brief. *Calderon v. District Court* (*Hayes*), 103 F.3d 72, 75 (9th Cir. 1996) (per curiam); *Valerio v. Crawford*, 306 F.3d 742, 776 (9th Cir. 2002).

Respondent's string citation to unpublished cases is unhelpful.  Respondent does not allege that *Park* has been overruled by any of these cases.  Respondent does not discuss any of the facts of these unpublished cases, and does not indicate whether any of them involved a default imposed prior to 1998; whether they contained a challenge to the default as inadequate and not independent; and whether they involved the ambiguous "to the extent that" language.  The Court should decline to do Respondent's work for it.[10]

Finally, the ambiguity in the state court order in this case renders its application of any bar non-sensical.  The state court also held that the claim was "successive." Exhibit 194. Assuming that means it was presented previously (which itself is unclear), how could a claim be both not presented and presented?

The state court's failure to articulate what aspects of this claim were presented previously, and Respondent's inability to do so, render this bar inapplicable under *Morales v. Calderon*, 85 F.3d at 1392.  For instance, the fair

---

[10] It is worth noting that several appear to have involved *pro per* litigants, as most habeas petitions do.  *See e.g. Flores v. Roe*, 228 Fed. Appx. 290 (9th Cir. 2007). To the extent these *pro per* cases involved pre-1998 appeals, and Respondent nonetheless invoked the bar without advising those courts of *Park's* holding, they are of very dubious value.

cross-section claim (Claim 5, subpart 2) relies extensively on a host of extra-record facts concerning the racial composition of the jury and the relevant community, along with the transcribed record of proceedings in another case that found a violation.   (Amen. Pet., at 35-39; Traverse, at 57-62).   Ordinarily, the state appellate court cannot consider facts outside the trial record on appeal, and presentation must await a habeas petition.  *In re Harris,* 5 Cal.4th 813, 828 fn. 7 (1993) (the rule requiring a claim be presented on appeal "does not, of course, apply to issues that could not be raised on appeal because they are based on matters outside the appellate record.").   However, in 1998, the state court noted for the first time that a claim relying on extra record facts will be subject to this bar if an "exhibit contains nothing of substance not already in the appellate record."  *In re Robbins*, 18 Cal. 4th 770, 814 fn. 34 (1998).[11]   Not only is this a *post-hoc* application of a bar to Mr. Rodrigues' extra-record claim, it also involves a bar so unclear as to the need to include extra-record facts in an appeal that it is unenforceable.   For capital cases, it runs afoul of the obligations of appellate counsel to review the appellate record and fashion issues that arise out of that record, and the state court never provided appellate counsel with any guidance as

---

[11] Respondent led the state court into this error.  It argued this claim could have been raised on appeal, but never articulated that this was because the facts should have been contained in the record on appeal.  (Exhibit ???, at 82).

to what this means.[12]

### 3.     Timeliness Bar

Respondent acknowledges that Mr. Rodrigues' case is a pre-*Robbins* case, meaning California's timeliness bar was neither adequate nor independent at the time of the alleged default.  (Opp., at 6); *see Bennett v. Mueller,* 322 F.3d 573 (9th Cir. 2002) (pre-*Robbins* timeliness bar not independent)*; Morales v. Calderon,* 85 F.3d 1387 (9th Cir.1996) (timeliness bar not adequate).[13]   Although Respondent is incorrect as to the date of the alleged default (1994 was the date of the first petition, not 1998), Respondent's main argument, without directly alleging so, is that this Court should reverse circuit precedent as a result of the Supreme Court's opinion in *Walker v. Martin*,

---

[12] Recently, the state court reformulated the standard yet again to preclude claims alleging extra-record facts unless those facts were "both unavailable at the time of trial and *significant* in scope."  *In re Reno*, 55 Cal.4th 428, 493-94 (2012) (emphasis added). Undoubtedly, several years from now we will be greeted with an opinion defining what is or is not "significant" in scope, or offered yet another vague definition practitioners needed to be following, even though they were never put on notice.  *See United States v. Givens*, 767 F.2d 574, 579 (9th Cir. 1985)("the brutal absurdity of commanding a man today to do something yesterday.").  *Fields v. Calderon*, 125 F.3d at 762-763 (California's attempt to clarify procedural rule shows inadequate previously).

[13]   **Error! Main Document Only.**Five years after the *Clark* decision, and years after the default in this case, the California Supreme Court issued two more opinions—*In re Robbins*, 18 Cal. 4th 770 (1998), and *In re Gallego*, 18 Cal. 4th 825 (1998)—designed "to analyze the timeliness issue and to explain, in the context of specific claims, how the timeliness rules are applied by our court."  *Robbins*, 18 Cal. 4th at 779.  Thus, by the California Supreme Court's own admission, *Clark* alone did not suffice to clarify the state's timeliness rules even five years after it was issued.  *See Robbins*, 18 Cal. 4th at 819 (Kennard, J., concurring and dissenting) ("had all [the pleading] requirements been well and clearly established, there would be no reason to issue the order to show cause in this case.").  **Error! Main Document Only.** *Dennis v. Brown*, 361 F. Supp. 2d 1124 (N.D. Cal. 2005) (timeliness bars pre-*Robbins* not adequate).

131 S.Ct. 1120 (2011). Specifically, Respondent, in typical circular fashion, argues that *Walker* established that discretionary bars are still enforceable, and that because the timeliness bar is a discretionary one, it is therefore enforceable here. (Opp., at 6). The faulty logic of applying the general from the specific ignores the doctrine of adequate and independent that has multiple components, of which discretionary enforcement is but one.

There are several, other distinctions. *Walker* involved a non-captial case, which has different rules. *Bennett*, 322 F.3d at 583. The *Walker* court addressed whether the timeliness bar as construed in *Robbins* is inadequate because it used vague terms in *Robbins* ("substantial delay"), and was not applied in many cases. 131 S.Ct. at 1128-29. It never addressed the applicability of the timeliness bar to pre-*Robbins* cases.[14] It never addresses the *Ford* issue upon which circuit precedent rests. Indeed, it appears to have assumed the case before it involved a post- *Robbins* default as its entire opinion analyzes the state court's use of the *Robbins* definition of "substantial delay." *Id*. Respondent's argument, therefore, runs afoul of the general principle that court decisions are not precedent for matters that are not the subject of decision. *Sakamoto v. Duty Free*

---

[14] Walker was undoubtedly viewed as a post-*Robbins* case. The first petition was filed in 1998. *Walker*, 131 S.Ct. at 1126. He conceded the *Ford* issue. 131 S.Ct. 1130 ("Martin does not contend, however, that in his case, the California Supreme Court exercised its discretion in a surprising or unfair manner."). He did not argue the bar was not independent, which was established for post-1998 cases in *Bennett*, so the Supreme Court never reached that question. 131 S.Ct. at 1127 (citing *Bennett* that California's post-*Robbins* timeliness bar is independent).

*Shoppers, Ltd.*, 764 F.2d at 1288.

Respondent, though, attempts some distinction from this well-known circuit precedent based on the fact that the Supreme Court noted that California cites both *Robbins* and *In re Clark*, 5 Cal.4th 750 (1993), the opinion that *Robbins* modified. (Opp., at 7). This is a thin reed indeed as the citation to *Robbins* actually supports Mr. Rodrigues's argument. *Walker v. Martin*, 131 S.Ct. at 1125 (three decisions describe the bar: *Robbins, Clark,* and *Gallego*). Throughout, *Clark* is cited in the conjunctive, with *Robbins.* There is no indication that the default, as discussed in *Clark,* was adequate. And, the citation to *Clark* was within the context of a discussion of how California cites to the bar, not how it was applied pre-*Robbins*. *Walker v. Martin*, 131 S.Ct. at 1129.

*Walker* did not overrule Circuit precedent that pre-*Robbins* timeliness bars are neither adequate nor independent. This Court should decline Respondent's invitation to do so.[15]

> 4. **California's Successor Bar Was Neither Adequate nor Independent at the Time of Mr. Rodrigues' Alleged Default**

In response to Mr. Rodrigues' second state habeas petition, the state court imposed a successor bar as to:

---

[15] Although unnecessary for this Court's review, it is not so clear that post-*Robbins* timeliness bars are independent because other aspects of the doctrine also require review of federal claims. *See* **Error! Main Document Only.***Gallego,* **Error! Main Document Only.**18 Cal. 4th at 834 (in order to determine triggering facts sufficient for exception to delay, court must review merits of the prima facie case); **Error! Main Document Only.***Robbins*, 18 Cal. 4th at 780 (good cause for delay depends upon merits of continuing investigation into claim); **Error! Main Document Only.***Sanders,* 21 Cal. 4th at 717-19 (must evaluate counsel ineffectiveness for exception to default).

Claim 4 (Juror Misconduct, state claim XV);

Claim 5 (Jury Selection, state claims XIV.B and XIV.C);

Claim 9 (Guilt IAC, state claim XII);

Claim 10 (conflicts, state claim XIII);

Claim 15 (innocent of special circumstances, state claim XIX);

Claim 20 (*Brady,* state claim XI); and

Claim 21 (false evidence, state claim XI)

(Exhibit 194).

Claims 4, 9, 15, 20 and 21 were also denied "to the extent" they were presented previously.  Exhibit 194.   Likely following Respondent's lead there, the state court was unwilling to identify what, if anything, was previously presented.

Respondent asserted the bar in his Answer, and reasserts it here, as to entire claims, when, it acknowledges, the claims were previously presented in the first petition, and suffered no defaults.  (Opp., at 7).[16]  In his Traverse, Mr. Rodrigues' noted that it is not clear which bar is being applied to which allegations because most were also defaulted as having been presented in the first state petition.  (Traverse, at 7).   The problem stems from the fact that the state court has yet to clearly articulate the rule for determining which successor bar it applies, and for when claims are presented anew to the state court, with additional evidence to support them.  It is exacerbated in this case

---

[16]   Respondent includes Claims 7 and 8 (penalty IAC), which are no longer at issue.

because the state court was unwilling to squarely address the issue and instead, ruled the claims were defaulted as both untimely and "to the extent" they had been previously raised.

Here, there was no effort by the state court or Respondent to identify what portions of the additional evidence are defaulted for being successive, or render a claim successive. Indeed, Respondent's complaint in state court was that the new facts were the same as the old ones, "merely additions to the facts previously developed in the same vein." (Brief in Opposition, at 74, Exhibit ???).[17]

As Respondent acknowledges, the Ninth Circuit has not upheld the successor bar to pre-*Robbins* cases. (Opp., at 8). It admits that the state court only in 1998 made clear that the bar is independent of federal review. *Id.* That should end the inquiry. *See In re Robbins,* 18 Cal.4th at 810-12 (announcing that in the future, state court will not examine federal constitutional question when deciding exception of constitutional error to timeliness and successive bars); *La Crosse v. Kernan*, 244 F.3d 702, 704-706 (9th Cir. 2001).[18] However, Respondent works backwards from *Walker*'s holding that

---

[17]  In state court, Respondent made this allegation when discussing the ineffectiveness of counsel allegation, then referenced that discussion for its arguments as to the other claims (Exhibit ??/, at 78 (*Brady* and false evidence claim); 79 (IAC guilt claim); 87 (juror misconduct).

[18]  Actually, state law is not so clear on this point. In *Clark,* the state court announced an exception for successive and untimely petitions, when they allege "error of constitutional magnitude." 5 Cal. 4th at 797. In *Robbins,* the state court clarified that going forward, the exception as it pertained to the timeliness bar did not include review the merits of federal constitutional claims. 18 Cal.4th at 810-12. This language was sufficient for the Ninth Circuit to rule that the timeliness bar was not independent pre-*Robbins. Kernan*, 244 F.3d

discretionary bars are enforceable to mean that this one is as well.  As noted above, *Walker* did not even address the successor bar, did not discuss whether the timeliness bar was independent, and did not address the post-hoc application of procedural bars.

In response to Mr. Rodrigues' argument that the bar is not sufficiently clear, particularly when applied to his case, Respondent offers a convoluted interpretation of California's successiveness bar, based on *In re Clark,* 5 Cal.4th 750 (1993).  (Opp., at 8)  It does this because if it relied on *Robbins* or subsequent cases, it would run afoul of the *Ford* preclusion of *post hoc* default. Respondent would have this Court believe that the *Clark* court identified two forms of successor bars: raised previously ("repetitious"), and could have been raised previously ("piecemeal and delayed"). (Opp., at 8).  Neither category fits Mr. Rodrigues' case – where additional facts are alleged to support previously presented claims.[19]  The second problem is that *In re Clark* contains no such discussion at all, much less a clear one.  Instead, the state court addressed *claims* previously presented and *claims* that should have been presented as being successive, without making any further distinction.  *In re Clark*, 5 Cal.4th at 767-68.  Indeed,

---

at 704-706.  The state court has yet to clarify that the successor bar exception for constitutional error is subject to the same state law qualification announced by the *Robbins* court for the timeliness bar.

[19]  *Clark* did not concern itself with this scenario because in that case, the petition alleged only claims previously presented, or those that should have been presented. 5 Cal.4th at 763.

"piecemeal" and "repetitious" are repeatedly used interchangeably for the same thing.[20]

The state attempted to clarify some of this in 1998. *Robbins*, 18 Cal. 4th at 788 n.9 (claim not presented previously will be barred unless excused). However, it was not until *In re Reno,* 55 Cal.4th 428, 496-97 (2012), that the state court addressed this issue directly and held that a petitioner who presents new facts in support of old claims that do not reflect a "change in the facts or the law substantially affecting the rights of the petitioner", will not be barred as successive, but the claims will not be reviewed under state law because they were already ruled on, unless the *Clark* exceptions apply.[21]   Thus, it appears that such claims are no longer subject to successor bars, but to a potential bar that the claim was already raised and rejected, which Respondent acknowledges is not a bar to federal review. (Opp., at 8).[22]

Even if the bar was independent of federal review in 1994, and even if it was clear enough for practitioners to understand and follow it, it was not

---

[20] In *Clark*, the phrase "piecemeal" is taken from older cases cautioning against repeated post-conviction applications.

[21] It is perhaps for this reason that the state court on February 26, 2014, denied five successor state habeas petitions solely on the merits without imposing any procedural bars (*Dennis*, *Hawthorne*, *Hillhouse*, *Jackson*, and *Proctor*). All related to instances where the petitioners exhausted new facts under *Pinholster* so as to have all facts considered by a federal court.

[22] It may be that the state court simply has not focused its attention to this bar as it has to the timeliness and *Dixon* bars. To add to the confusion, *Reno* also announced that "successive" petitions means any second petition. 55 Cal.4th at 441.

1

2 consistently or regularly applied.  Although Respondent cites to a number of

3 unpublished opinions (which are not appended as exhibits), it again fails to discuss

4 what was at issue there.  (Opp., at 7).  Were they pre-*Robbins* defaults? Did they

5

6 even discuss whether the bar was adequate or independent?  Was that discussion

7 resolved against a pro per petitioner who failed to adequate contest the bar?[23]

8

9 In numerous cases that post-date the *Clark* decision, the California Supreme

10 Court disregarded the successiveness default when faced with a second petition.

11 See e.g. *In re Hamilton (Michael),* No. S040799 (May 6, 1999); *In re Nicolaus*

12 *(Robert)*, No. S060675 (Jan. 17, 2001); *In re Osband (Lance)*, No. S063051 (Oct.

13 28, 1998); *In re Raley (David)*, No. S053603 (Aug. 19, 1998); *In re Clark*

14 *(Richard)*, No. S060797 (Aug. 13, 1998); *In re Espinoza (Antonio)*, No. S062244

15

16 (Feb. 17, 1999); *In re Visciotti (John)*, No. S074291 (Feb. 24, 1999); *In re*

17

18

19 [23] This failure is more than speculative. All are non-capital cases. *Robinson v. Virga*, 2013 WL 3071298, appears to involve a magistrate opinion concerning the timeliness

20 bar, a pro per petitioner, a state default after 2008, and an interpretation of *Walker* (that it reached the question of independence) that has been rejected by circuit courts. *Smith v.*

21 *Busby,* 2012 WL 2061591, was also a magistrate opinion with a pro per petitioner, no litigation over adequacy or independence, a state default after 2007.  *Rutledge v.*

22 *Katavich*, 2012 WL 2054975, was a pro per petitioner, 17 state petitions, a 2007 alleged default (the District Court erred when it stated the default was in 2008 at the time of the

23 second petition), review of state law as of 2008, a petitioner who did not contest adequacy.  *Larimore v. Yates,* 2010 WL 4829574, involved a pro per petitioner, a 2008

24 default (and an opinion that prior to *Robbins*, the bar was not independent), and a questionable interpretation that *Siripongs* reached the issue of adequacy post-*Clark*

25 (which is untrue).  *Arroyo v. Curry*, 2009 WL 723877, involved a pro per petitioner, a parole hold claim, a 2005 default, a clearly repetitious claim, a reasoned state decision on

26 the bar that indicates which one is being applied, and a pleading error by the petitioner that precluded review of the state court's bar.

27

28 REPLY- CASE NO. 4:96-CV-01831-CW

28

*Crittenden (Steven)*, No. S060706 (Aug. 18, 1999); *In re Sanders (Ronald)*, No. S082022 (Sep. 22, 1999); *In re Cain (Tracy)*, No. S067172 (Jun. 28, 2000); *In re Edwards (Thomas),* No. S092074 (Nov. 15, 2000); *In re Bittaker (Lawrence)*, No. S052371 (Nov. 29, 2000). The state court has also treated claims differently within the same successive petition, denying some claims based upon successiveness while reaching the merits of others. *In re Turner (Melvin)*, Case No. S069718 (Dec. 13, 2000); *In re Hawkins (Jeffrey)*, Case No. S065450 (Mar. 9, 1999); *In re Jackson (Noel),* Case No. S070227 (June 3, 1999). The California Supreme Court has even failed to apply the successiveness bar for third and fourth habeas petitions. *In re Jones (Earl),* Case No. S073227 (Feb. 23, 2000) (third petition); *In re Johnson (Laverne),* Case No. S077521 (Apr. 14, 1999) (fourth petition).

Several district courts have found California's successiveness rule inadequate to bar federal review of claims defaulted after the Clark decision. The district court in *Dennis v. Brown* found that California's successiveness rule had not become consistently applied by as late as 1996. 361 F. Supp. 2d at 1133. The district court in *Ayala v. Ayers* reached the same conclusion regarding a default that occurred in sometime between 1998 and 2003. 2007 WL 2853934 at *5-7.

Given the above, Respondent has not met its burden of establishing the bar

in the first place, or that it was adequate or independent at the time of the alleged default in 1994.

5.    **The State Court's Postcard Denial that Some Claims were Raised Previously is not a Bar to Federal Court Review.**

Perhaps the most confusing argument by Respondent is the one that seeks to bar federal review based on a state court holding that certain claims were already raised and rejected on the appeal and the previous state court petition.  (Opp., at 8-9).  Commonly known as the *Waltreus* bar, it has been held not to be a bar to federal review at all.  *Cone v. Bell*, 129 S. Ct. 1769, 1781 (2009); *Hill v. Roe*, 321 F.3d 787, 789 (9th Cir. 2003); *Carpenter v. Ayers*, 548 F.Supp.2d 736 (N.D.Cal.2008) ("*Miller* merely maintains the status quo of what occurred when the same claims were raised in the first state habeas petition, and does not act as a separate procedural bar to federal habeas review.").  Respondent does not address these precedents.

Instead, Respondent offers a convoluted interpretation of the state bar without citation to any authority, which is to the effect that the bar is really two bars – one for raising the claim previously; and another for presenting new facts to support a previously raised claim.  (Opp., at 9).  Perhaps Respondent would like the state courts to "clarify" this bar in some fashion to circumvent clear precedent, but until it does so, this Court is bound by that precedent.  Indeed, Respondent's

interpretation makes no sense at all.  The bar is the state court's determination that the "new" facts don't alter the merits of the claims (i.e. the federal constitutional bases for them) in such a manner that would require further review.  *In re Miller*, 17 Cal.2d 734, 735 (1941).  Not only is this not a bar, it is not independent of federal review.

Respondent, in an effort to circumvent this clear precedent, attempts to tie the procedural bar to the exhaustion doctrine, a federal court question.  (Opp., at 9).  It does this by working backwards again – because federal courts may review unexhausted claims if they are denied for procedural reasons as opposed to the merits, this means that all unexhausted claims are procedurally defaulted.  (*Id.*).  Aside from facial circularity and a misinterpretation of the exhaustion doctrine, there was a state court merits denial in this case so the entire argument is specious.

What is lost in all this is the fact that no where does Respondent or the state court take the time or effort to identify what within these claims was newly presented and is therefore barred.  If it were a bar to relief, both Respondent and the state court would have to articulate that bar in such a fashion that this Court could examine it and determine whether it precludes federal review, and to what extent.  The fact that it does not do so signals to this Court that the state court was merely saying it had already decided the issue, not that this decision precludes

consideration of it.

6. **Cause and Prejudice**

Mr. Rodrigues asserted that to the extent that any bar may apply, this Court may still examine the merits because such a bar was the result of state post-conviction counsel's deficient performance under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). (Traverse, at 7). Instead of addressing this, Respondent argues this Court should ignore *Martinez.* (Opp., at 9-10). Indeed, Respondent does not even address *Martinez.* Instead, it addresses the doctrine of cause and prejudice to overcome defaults in *Coleman.* As the Supreme Court noted in *Martinez,* it was making an *exception* to *Coleman.* 132 S.Ct. at 1315. And, instead of focusing on *Martinez,* Respondent posits an entirely inapplicable standard for the exception, one that is based on ineffectiveness claims as reviewed under AEDPA, rather than the precise language in *Martinez* that is contrary to this. *See* 132 S.Ct. at 1318 ("To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit", citing to the standard for a COA). Respondent also raises an argument based on section 2254(i) that the Supreme Court specifically rejected. *Martinez,* 132 S.Ct. at 1320.

Because Respondent has failed to address the exception, it has waived any argument that it does not apply here to trial ineffectiveness claims.

1

2 **C.      Mr. Rodrigues is Entitled to Relief, or a Hearing and Discovery**

3          Respondent spills much ink about the general standards for relief (Opp., at 10-17),

4  but little time discussing the facts or arguments presented by Mr. Rodrigues.

5

6          In response to Mr. Rodrigues' Traverse, which lays out citations to the evidence in

7  support of his claims made in the Amended Petition, and notes that Respondent has not

8  identified a single fact it disputes, Respondent asserts that its general denial of all

9  allegations was sufficient to dispute *all* facts.  (Opp., at 17).[24]  It then chastises Mr.

10  Rodrigues for not identifying facts in dispute.  *Id.*  But, Mr. Rodrigues cannot be faulted

11  for not knowing what Respondent disputes because its Answer is deficient, and

12  Respondent again refuses to take the time and effort to identify any facts it disputes here.

13

14          Respondent's general denial is improper and cannot serve to contravene any of the

15  facts alleged.  Respondent must state "its defenses to each claim asserted against it," and

16  "admit or deny the allegations asserted against it by an opposing party." Fed.R.Civ.P.

17  8(b)(1). In addition, "[a] denial must fairly respond to the substance of the allegation."

18  Fed.R.Civ.P. 8(b)(2). A party may use a general denial only if it "intends in good faith to

19  deny all the allegations of a pleading." Fed.R.Civ.P. 8(b)(3). However, "situations in

20  which the [pleading] can be completely controverted are quite rare." 5 Charles A. Wright

21  & Arthur R. Miller, *Federal Practice and Procedure* 1265 (3d ed.2004). "This means

22

23

24

25  _____

26  [24]  Respondent also contends that within the Answer, there are disputed facts, but cannot
offer a single citation to any such dispute.  (Opp., at 17).

27

28

that an answer consisting of a general denial will be available to a party acting in good faith only in the most exceptional cases." *Id*. Where a party "does not intend to deny all" of the pleading's allegations, that party "must either specifically deny designated allegations or generally deny all except those specifically admitted." Fed.R.Civ.P. 8(b)(3).   Respondent obviously could not in good faith deny all allegations in the Amended Petition as many are recitations of the record with which it agrees. Respondent has not specifically admitted any facts.  Thus, its general denial is improper to put any facts in contention.[25]

Under state law, such a general denial would not serve to contest any facts pled in a petition or contained in declarations in support.  *People v. Duvall*, 9 Cal.4th 464, 481-83 (1995).  Here, Respondent did not contest any factual assertions and presented no contrary facts in state court.

In any event, the state court accepts as true all allegations and facts presented by a habeas petitioner, except for wholly conclusory allegations. *Duvall*, 9 Cal.4th at 474; *Pinholster*, 131 S.Ct. at 1403 n. 12.  A "wholly conclusory allegation" is one where a petitioner failed to "provide any explanation of the basis for the allegation", or failed to state "fully and with particularity" the facts upon which relief is sought.  *Duvall*, 9 Cal.4th at 474. There is no indication that the state court held Mr. Rodrigues made such

---

[25] Respondent attempts to excuse its pleading deficiency by asserting Mr. Rodrigues did the same thing in his Traverse.  Opp., at 17-18 n. 4.  Aside from the use of the fallacy of "tu quoque" arguments, it ignores the fact that Mr. Rodrigues had nothing in the Answer that would require him to dispute it.

conclusory allegations.  *See Gaston v. Palmer*, 417 F.3d 1030 (9th Cir. 2005) (state court citation to *Duvall* and *Swain* indicates when state court holds allegations to be conclusory).  Such a holding, to the extent Respondent is now asserting it, is not a decision on the merits. *Kim v. Villalobos*, 799 F.3d 1317 (9th Cir. 1986).[26]  AEDPA then, would not apply.

As for the standard of review under AEDPA, Respondent offers nothing new and does not bother to articulate how it prevents review here.  A court may not grant habeas relief unless the state court's resolution of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).  Contrary to Respondent's main contention, this Court is not required to find these standards are met *prior* to ordering a hearing.  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing *could* enable an applicant to prove the petition's factual allegations, which, *if true*, would entitle the applicant to federal habeas relief.')(emphasis added).  It is only if the record refutes the factual

---

[26]   Further, simply examining the detailed allegations in both the first and second state court petitions, and detailed declarations offered in support, no fair-minded jurist would conclude the allegations are "wholly conclusory."

allegations or "otherwise" precludes relief, that a hearing is not required. *Id.* The only barrier is when it is alleged that a petitioner has failed to develop his claims in state court, which is not a credible assertion in this case where the state court's processes (no discovery or a hearing) frustrated any further factual development. 28 U.S.C. § 2254(e)(2). Of course, it is always within a court's discretion to hold such a hearing. In both the mandatory and discretionary contexts, the determination is still guided by traditional factors long held to apply, which Respondent does not dispute here. *Earp v. Ornoski*, 431 F.3d 1158, 1169-70 (9th Cir.2005) (applying traditional *Townsend* factors; when state court denies hearing, standard is whether petitioner makes out a colorable claim for relief).

As for the first substantive prong, unreasonable application of Supreme Court precedent, when a state court, as here, declines to provide a petitioner or federal court with any reasoning, the Supreme Court has adopted a number of standards, all of which appear to differ and none of which provide specific assistance to District Courts. *See Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (relief precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision"); *Id.* ("whether it is possible fairminded jurists could disagree that [the state court's] arguments or theories are inconsistent with the holding in a prior

decision of this Court." )[27]; *Id.* ("where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents"; *Id.*, at 786-87 ("so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").[28]  Where, as here, there is no written decision, and only a post-card denial, the habeas court must examine possible reasons for the denial.  *Id.*  But, those possible reasons themselves must be reasonable, i.e. not contrary to the facts presented to the state court or invented out of whole cloth.  *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir. 2013).  Here, the only reasons offered for the state court's decision are those suggested by Respondent in state court, which no fair-minded jurist would adopt.

As for the second prong, unreasonable determination of the facts, that is not precluded by the absence of a reasoned decision.  In fact, the absence of such a decision without a state court hearing can itself be unreasonable.  See *Hibbler v.*

---

[27]  This standard, which requires examination of "arguments or theories" is impossible to apply when a state court issues a post-card denial and the Supreme Court will have to explain why or how it is relevant to *Richter.*

[28]  The question of a "fair-minded jurist" may be an interesting empirical inquiry as applied to the California Supreme Court during the time of Mr. Rodrigues' petitions. Faced with hundreds of appeals and habeas petitions in capital cases, the post-recall election court granted such a small fraction (the fewest in the Nation) as to implicate statistical bias.  **Error! Main Document Only.**Arthur L. Alarcón, *Remedies for California's Death Row Deadlock*, 80 S. Cal. L. Rev. 697, 742 (2007).  The recent state court generally reserves grants of hearings to those represented by state agencies, where the costs will be borne by a different budgeting entity, and to *Atkins* claims.

1
2   *Benedetti*, 693 F.3d 1140, 1146–47 (9th Cir.2012) (state court fact-finding process

3   unreasonable for state court to not hold a hearing); *Perez v. Rosario*, 459 F.3d 943,

4
5   950 (9th Cir. 2006) (reasonable for a state court to resolve a disputed factual

6   question without an evidentiary hearing when the allegations are "incredible in

7
8   light of the record, or ... when the record already before the court is said to

9   establish a fact conclusively"). Thus, if this Court holds that the state court's

10  failure to provide a hearing was unreasonable, given the uncontested factual

11
12  presentation that must be presumed to be true and the state's prima facie standard,

13  AEDPA deference to that state merits decision does not apply. This is not difficult

14  for Mr. Rodrigues – no reasonable court, presented with the evidence he has

15  presented, which is uncontested, would deny a hearing.

16
17      1.      **Claims 1 and 3: Trial While Mentally Incompetent and Counsel**

18              **Ineffectiveness**

19          Respondent bundles two claims: Mr. Rodrigues was incompetent (Claim 1), and

20  his counsel deficient for not requesting a hearing (Claim 3). It fails to address procedural

21
22  incompetence (Claim 2), except to rely on the state appellate court's decision on that

23  appellate record claim as a basis for justifying the state court's decision to deny the

24  habeas record based Claim 1 and Claim 3. Respondent confines its analysis to the sparse

25  trial record rather than the full habeas record, which it cannot do. The lack of a full

26  record at trial was the result of two violations of Mr. Rodrigues' trial rights: his right to

27
28

have the trial court independently conduct a competency inquiry, and his right to have

trial court investigate and present incompetence.  It is also the result of the state appellate

court's unreasonable failure to conduct fact-based inquiry in light of the evidence

presented in habeas. And, by not addressing Claim 2 on its merits, Respondent avoids

having to justify a clearly unreasonable application of Supreme Court precedent by the

state appellate court in its holding on when a trial court must conduct a competency

determination. Thus, Respondent hopes to have this Court rely on a truncated record in

determining Claims 1 and 3, without having the Court examine the constitutional

violations attached to that record discussed in Claim 2.

Respondent begins with a lengthy, selective discussion of the trial transcripts

wherein trial counsel stated they thought Mr. Rodrigues may be incompetent, but needed

additional time to investigate it, and were denied that time.  (Opp., at 18-19).[29]

Respondent's discussion of the record omits some critical passages.  For instance, it

omits counsel's reference to *People v. Stankewitz*, 32 Cal.3d 80 (1982) (court in error for

not holding hearing when counsel stated defendant's distrust of counsel), and counsel's

representation that this was a similar situation where a defendant believed, irrationally,

that the defense lawyer was in cahoots with the prosecutor. (Exhibit 2, at 8, 20). It

declines to include counsel's representation that Mr. Rodrigues could not "articulate or

---

[29] In Claim 2, Mr. Rodrigues alleges the trial court violated due process when it failed to instigate competency proceedings. As part of that violation, the trial court refused to grant trial counsel more time to investigate incompetence, and instead enforced Mr. Rodrigues' assertion of his speedy trial rights.

even discuss with us the options" facing him.  (Exhibit 2, at 18); that Mr. Rodrigues complained he was getting different information from his lawyers (*Id.* at 20); that he felt his attorneys were against him (*Id.*); that the trial court advised counsel to use short sentences and simple words (*Id,* at 22).; that Mr. Rodrigues was confused about time waivers and thought they could be done "on appeal" (Ex. 13, at 15-16); and, counsel's statement that Mr. Rodrigues' seizures and resulting lack of brain oxygen may be related to his regular migraine headaches (Ex. 13, at 16-17).   It must be presumed that this one-sided factual recitation is one the state court adopted, which itself would constitute an unreasonable application of the facts.

More significant than these omissions, however, is Respondent's failure to address any of the evidence cited in the Traverse and exhibits.   It states, incorrectly, that no expert opined Mr. Rodrigues was incompetent at the time of trial (Opp., at 26), when uncontroverted evidence is that trial counsel's own expert informed trial counsel that Mr. Rodrigues was incompetent, but was ignored.  (Exh. 164, App. 10, pars. 8-14)  It is only from this mis-apprehension of the record that Respondent, without a scintilla of evidence in support, can argue that trial counsel concluded there were insufficient grounds to declare a doubt as to competency.  (Opp., at 26).   Respondent then attempts to blame Mr. Rodrigues for his counsel's refusal to provide a declaration in post-conviction that Mr. Rodrigues was incompetent (Respondent never produced any declaration contrary to the trial expert's), and points out that no such doubt was declared in previous criminal cases.  (Opp., at 26).  Respondent also makes an argument that because Mr. Rodrigues is

1

2   mentally retarded, and because mentally retarded persons can be competent to stand trial,

3   Mr. Rodrigues must have been competent.  (Opp., at 18-19).  Finally, Respondent's

4   asserts that the post-conviction declarations were obtained six (6) years after trial.  (*Id.*).

5
            Respondent's arguments are exactly why this Court must find the state court
6
    determinations on habeas to be both an unreasonable application of Supreme Court
7
    precedent and an unreasonable application of the facts.  They are clearly an unreasonable
8
    application of the facts: failing to address and ignoring relevant evidence; stating
9
    evidence does not exist when it clearly does; relying on the absence of evidence that is
10
    not required to establish a constitutional violation; relying on a record where the state
11
    court failed to conduct a hearing, especially regarding counsel's actions.  It is also
12
    contrary to the law on competence: mentally retarded persons can be incompetent; post-
13
    conviction declarations can establish incompetence; counsel is duty-bound as an officer
14
    of the court to inform the court as to incompetence; a court must order a hearing if there
15
    is a reasonable doubt as to competence.[30]  *Taylor v. Maddox*, 366 F.3d 992 (9th Cir.
16

17

18

19

20  [30] There appears confusion over the standard for when a trial court must grant a hearing.
    Respondent and the state court use the phrase "substantial doubt."  To the extent this
21  differs from "reasonable doubt" (i.e. a bona fide reason to have a doubt, such as potential
    brain damage and trial counsel's expressed concern a defendant may be incompetent), it
22  is an unreasonable application of Supreme Court precedent. *See McMurtrey v. Ryan,* 539
    F.3d 1112, 1125 (9th Cir.2008); *Moran v. Godinez*, 57 F.3d 690, 695 (9th Cir.1994)
23  (whether a reasonable jurist would have a *bona fide* doubt).  The substantial evidence test
    is actually a mis-application of state court precedent.  In *People v. Pennington,* 66 Cal.2d
24  508, 516–517 (1967), the state court, examining *Pate*, held that because substantial
    evidence was presented in that case, a hearing was required.  Somewhere in the
25  intervening years, the state court adopted this as the required showing.  Extrapolating the
    quantum of proof from that established in any one case, and then applying that quantum
26  of proof as necessary for all cases is an unreasonable application of Supreme Court
27

28  REPLY- CASE NO. 4:96-CV-01831-CW

                                         41

2004).

Respondent's tortured logic continues with his analysis of the claims. Simply because Mr. Rodrigues relied on some of the same declarations to demonstrate intellectual disability does not mean he is claiming because he suffers such a disability he was incompetent. (Opp., at 18). Obviously, both can be true – a fact Respondent does not dispute. And, the Court need not reach the question of whether the state statute is constitutional in requiring a disability or defect, because it is the state court's interpretation that is deficient – requiring a diagnosed disorder; an expert's sworn opinion that disorder renders him incompetent; foreclosing neurological disorders or retardation as a defect; and that counsel's opinion that a defendant may be incompetent is insufficient. *Rodrigues,* 8 Cal.4[th] at 1110-12.

More importantly, in its brief discussion of the actual habeas claim of incompetence (Claim 1), all that Respondent can point to is the fact that the appellate found held that the trial record did not contain sufficient evidence for the trial court to declare a doubt; and that the post-trial declarations are a few years after trial (although some, including McKinzey's declaration that he found incompetence and advised counsel, are declarations describing events at trial).

---

precedent. In fact, the genesis of the state court's requirements for an expert opinion supporting incompetence in order to establish a bona fide case appears from a similar fallacy – looking at what was presented in *Stankewitz* in post conviction, and requiring that presentation at trial. *Rodrigues,* 8 Cal.4[th] at 1110-11, interpreting *People v. Stankewitz,* 32 Cal.3d 80, 92 (1982).

(Opp., at 26).   Although it spends a great deal of time discussing the facts and holdings regarding Claim 2 (failure to hold a hearing), Respondent does not assert that the trial record refutes Claim 1, nor does he assert any basis for a reasonable jurist to reject Claim 1 without a hearing.

No reasonable jurist could rely on trial counsel's inaction to reject the competency claim (Claim 1).   First, the Ninth Circuit has cautioned against reliance on counsel inaction in this context. *Odle v. Woodford*, 238 F.3d 1084, 1089 (9th Cir. 2001); *Hernandez v. Ylst*, 930 F.2d 714, 718 (9th Cir.1991).   Second, and probably dispositive, the state court accepted as true the allegation, supported by a declaration by that expert, that counsel was advised by his own expert that Mr. Rodrigues was incompetent.   Third, Respondent does not dispute the allegations, which the state court was bound to accept as true and which are supported by the records and declarations, that trial counsel failed to investigate mental health issues (competency, insanity and mitigation) altogether other than consulting briefly with Dr. Missett and Dr. McKenzie, and then, contrary to those experts' advice, failing to do anything more once counsel secured a time waiver from Mr. Rodrigues, which was his only real goal in raising the issue.   *See* Cal. Pen. Code section 1368(a) (requiring postponement while counsel investigates).

Nor could a reasonable jurist rely on the fact that some of the declarations

REPLY- CASE NO. 4:96-CV-01831-CW

are six (6) years after trial.  Noticeably, Respondent cannot cite to a single instance in which any court concluded that because the declarations relevant to competency were obtained post trial, it would be reasonable for a state court to reject them without a hearing.  Indeed, circuit precedent is to the contrary.  *Odle v. Woodford*, 238 F.3d 1084, 1089-90 (9th Cir. 2001) (retrospective competency inquiry 17 years after trial).  *Pate* itself relied extensively on a post-conviction record of similar vintage.  *See People v. Pennington,* 66 Cal.2d at 516–517 (discussing *Pate*).  This is not a case such as *Williams v. Woodford*, 384 F.3d 567, 608-609 (9th Cir.2002), where trial counsel opined that the defendant was competent, the trial experts agreed, and after a hearing, the court found post-conviction declarations to be less credible. Even if some of the expert declarations after trial were to be questioned, Respondent ignores the fact that most of them were from experts who examined Mr. Rodrigues at the time of trial.  *See Deere v. Woodford,* 339 F.3d 1084, 1086 (2003) (post-conviction declaration by trial expert "stands on different footing").[31]

While it may be Mr. Rodrigues' burden to establish reasonable jurists would not deny relief, it is still up to either the state court or Respondent to come forward with some reasonable articulation in support of the determination.  *See e.g. ITSI T.V. Prods.,*

---

[31] Of the expert declarations, only the Woods declaration is of a new expert who opines as to competency after trial.  Riley conducted neuropsychological testing, which is not dependant on when it was conducted.  Misset, McKenzie and Frick were trial experts.

*Inc. v. Agric. Assocs.,* 3 F.3d 1289, 1292 (9th Cir.1993)(state's burden to articulate basis for 11th Amendment immunity). Neither in its Answer nor in its Opposition can Respondent point to a single reason why the state court could reasonably deny relief such as the competing defense strategies evident in *Richter* and *Pinholster.* It can only state, in wholly conclusory fashion, that the state court could reasonably violate its own rules and reject the evidence in post-conviction. (Opp., at 27). To the extent the state court did so without a hearing, that determination would be an unreasonable application of the facts. Citing *Pinholster*, Respondent believes the Supreme Court held that California court rejecting habeas claims are doing so because they are rejecting the facts presented. (Opp., at 27). That is decidedly *not* what the Supreme Court said, and it is certainly not what the California courts hold. As discussed above, facts are rejected only if they are conclusively disproven (which Respondent does not contend here), or are wholly conclusory (allegations stated without any support, which Respondent does not assert here and the state court denial does not indicate because it doesn't cite to *Duvall*). *Gaston v. Palmer*, 417 F.3d 1030.

As for Claim 3, counsel ineffectiveness, Respondent relies on the truncated trial record and appellate decision for this habeas claim, ignores the compelling habeas presentation and fails to refute Mr. Rodrigues' argument that, even if it were relevant, the state court's legal standard for Claim 2 was an unreasonable application of the law. (Opp., 27-29). The state appellate court merely rejected a record-based claim and stressed repeatedly that the appellate record did not contain important information, such

as what the experts were telling counsel after the proceedings on time waiver concluded. *Rodrigues,* 8 Cal.4th at 1111-12.  It also based its counsel ineffectiveness decision on the flawed construct of what is required to trigger a hearing, discussed in reference to Claim 2.  *Id.*  It did not decide the habeas claim in its opinion.

Respondent offers no tactical reason for counsel's inaction in light of the *habeas* record – the one at issue here, which includes the trial experts' declarations.  Respondent initially attempted to claim, without citation, that counsel's "concerns" about Mr. Rodrigues' ability to assist were "alleviated."  (Ans., at 30).  This proved elusive because there is no record of such, the habeas record is to the contrary (Frick testing and McKinzey's opinion), and it only addresses half the competence equation – it says nothing about that ability to understand the proceedings.   Now, it alleges, without support, that trial counsel did not wish to declare a doubt until "they were confident that was the appropriate course."  (Opp., at 28).  Whatever this means, it is not a reason to not request a hearing, which is required not only when counsel have a doubt, but whenever counsel *may* have such a doubt. Cal.Pen.Code §1368(b).  Respondent cannot dispute the allegation of deficient performance with any articuable reason for counsel's actions because there is none.  Counsel is duty-bound to declare a doubt, even if, as appears here, he may be concerned about the fact-finding process involved.[32]  The Supreme Court has been clear that competency is not subject to waiver.  *Pate v. Robinson,* 383 U.S. at 384 ("

---

[32]  Counsel expressed a concern about having the court appointed experts.  Counsel noted that concerned was initially raised by Dr. Missett to him.

it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial."). For this reason, counsel faced with an expert opinion the client is incompetent has no choice but to bring it to the attention of the court. *Jermyn v. Horn*, 266 F.3d 257, 283, 301 (3d Cir.2001); *Hull v. Kyler*, 190 F.3d 88, 93–94 (3d Cir.1999).  Respondent can point to no case that holds once trial counsel is advised by his own expert that the defendant is incompetent, a state court can reasonably uphold that counsel's determination not to request a hearing.  Added to this case is the fact that counsel utterly failed to conduct any of the necessary mental health background investigation his own experts were telling him was required in the first place.[33]  The only question, then, is prejudice – whether a hearing would have resulted in a determination Mr. Rodrigues was not competent to proceed.

Respondent does not address prejudice. This is an admission that once the habeas evidence was known, the trial court would have had to conduct a hearing, such that no reasonable court could deny that incompetency would have been established.  Unlike several cases, this case does not involve any contemporaneous opinion that Mr. Rodrigues was competent. *See Deere v. Cullen*, 718 F.3d 1124 (9th Cir. 2013) (two trial-level experts and counsel testimony that defendant was competent).  No reasonable court

---

[33] Respondent states the "record" shows counsel conducted an investigation into competency.  (Opp., at 28).  By "record" it is referring to the appellate transcripts, because the habeas record is to the contrary.  That "record" though, only shows they hired two experts who examined Mr. Rodrigues briefly (once), had not records, and that they were in the "process" of securing records (not that they actually did so).

could deny this claim without a hearing.

## 2.    Claim 4 – Juror Misconduct

Juror Langston was untruthful in her responses to questions.  Whether it was out of a desire to hid from what she may have considered an embarrassing past, or because she did not wish to disclose her bias, the result is the same – Mr. Rodrigues was tried and convicted by a juror who never should have been permitted to remain.

Respondent begins its response with a confused discussion of juror misconduct law that focuses on the jurors' use of extrinsic evidence.  (Opp., at 29-30).  Respondent correctly identifies *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548 (1984), as controlling authority for a juror who withholds information such that a for-cause challenge would be granted, but omits any discussion of implied or actual bias.  (Opp., at 31-32).   Its main contention is that Mr. Rodrigues has not established the first step, withholding of information by Langston, because of information that Langston's declaration doesn't contain.  (*Id.*).  But, the inquiry mandated by *McDonough* is whether the juror was asked about their life experiences in a manner that would elicit the response at issue, or whether the questioning was susceptible to different or mis-interpretation such that the answer was honest. *McDonough,* 464 U.S. at 555-56.  Respondent does not assert there was any lack of clarity associated with the inquiry (i.e. were you a victim?).  Instead, it asserts because her declaration doesn't identify the specifics of the

information she withheld, it must mean that it slipped her mind.  (Opp., at 31).

Tellingly, Respondent relies on cases where an evidentiary hearing was held and

the juror made such a claim which a court found credible.  (*Id.*).[34]  No reasonable

court would deny this claim without a hearing based on the lack of information

Respondent relies on.

   Further, Respondent is simply being untruthful when it claims the instances

lack specificity.  Langston recalls the burglary (the same crime alleged here) with

precision – the date and what was stolen.  (2nd Pet., exh. 78, par. 5).  She states she

was close to her brothers, having raised them, was aware of their drug use and

criminal histories, including her brother's homicide and its circumstances

involving drugs and money (the same crime as here), and spoke with them

regularly.  (*Id.,* at pars. 3-4).  How Respondent could claim Langston wasn't close

to her brothers, and only thought she had sister, when she declares the opposite ("I

was close to my brothers and sisters") is simply incomprehensible.   Respondent

further mis-states the record by arguing one can infer Langston was unaware of her

brothers drug problems, when Langston says she was ("a number of my brothers

were drug users").

---

[34] Actually, Respondent cites cases on two issues – whether the question was imprecise
and whether the answer was an honest but forgetful response.  The former is not an issue
here – Respondent cannot identify any imprecision in language such as occurred in
*McDonough* or *Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007).

It is highly likely the state court was led into error by these kinds of misrepresentations by the state's representative both as to the operative facts and relevant law.  Its decision, to deny relief without a hearing, is both an unreasonable application of facts, and an unreasonable application of precedent on juror misconduct.

As for Juror Bourdelais, Respondent cannot refute the evidence that she slept during the guilt phase, the trial court was aware and did nothing, and she had made up her mind as to guilt before deliberations.  Respondent does not address any of the allegations or declarations in the habeas action, or offer any reason why a state court could reasonably deny this claim without a hearing.  Instead, Respondent cites its own Answer as if it were authority for what occurred at trial or in the pleadings, and thereby mis-states the record.  For instance, Respondent would have this Court believe Mr. Rodrigues did not make a claim that Bourdelais made up her mind in guilt. (Opp., at 32, citing to  Resp.'s Answer).  That is exactly the claim in the second state petition (at page 140).  It is supported by the record.  Exhibit 133 (RT 13374-75) (note states conduct occurred weeks ago, which was during guilt phase); Exhibit 133 (RT 13374) (counsel says it occurred throughout trial); Exhibits 186 and 190 (state pet. exhibits 78, 80).   To the extent that the state court adopted Respondent's arguments, which are specious, it was an unreasonable determination of fact.  No reasonable court, faced with this evidence, could deny relief without a hearing.

### 3. Claim 5 – Discrimination in Jury Selection

In response to a well-supported claim of a cross-section violation which contains an analysis of the entire pool and those excluded, as well as evidence from another case wherein a disproportionate mechanism of exclusion was found, Respondent can only lamely claim it is "conjecture." (Opp., at 34). To the extent this the claim contains any "conjecture", it is entirely the state's fault in (1) refusing to disclose data; and (2) refusing to issue an order to show cause on the claim so that discovery and a hearing can be held. Once again, Respondent can point to no reason why a state court could reject this claim without a hearing. Thus, denial without a hearing is an unreasonable determination of fact.

Respondent's response to the claim of discriminatory peremptory challenges is even thinner. His only argument is that there was no objection at trial, and that excusing pro-prosecution jurors was proper. (Opp., at 34). The latter is *evidence of discrimination,* a point made in the Traverse but never addressed by Respondent. The former argument, the lack of objection at trial, is exactly the point – trial counsel had no reason for failing to object, and Respondent cannot offer one. Given this, no reasonable court would reject this claim without a hearing.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 4.      Claims 9, 10, 14, 20 and 21

As to all of these claims, Respondent offers nothing new.  (Opp., at 34-38).

Mr. Rodrigues has already discussed the arguments by Respondent in his Answer,

and will not repeat those arguments here.  It should be noted that both in the

Answer and here, Respondent cannot offer any reasonable reason that the state

court would deny the claims without a hearing.

### D.    Discovery and a Hearing are Appropriate

Respondent merely states a hearing is not needed because Mr. Rodrigues

cannot identify disputed facts.  (Opp., at 38).  Of course, that is because

Respondent has not disputed a single fact in the case.  Under such circumstances,

relief is appropriate without a hearing. *James v. Ryan*, 679 F.3d 780, 820-22 (9th Cir.

2012).    However, because the state court failed to provide any factual development in

habeas, to the extent Respondent is alleging insufficient facts, such as the lack of

counsel's reasons for their inactions, or Juror Langford's reasons for not disclosing her

background information, or what suppressed evidence would show, then a hearing is

required.  It is required because it was an unreasonable determination of fact to rule

against the claims for the reasons Respondent suggests

Respondent is also incorrect as to the standard for a hearing on habeas counsel's

ineffectiveness under *Martinez*.  (Opp., at 38).  It is not a substantive claim for relief, and

therefore need not be exhausted.  Instead, it is a cause for excuse from default.  In any

event, Respondent's mis-states the habeas record.  Mr. Rodrigues devoted several pages to alleging state appellate and habeas counsel ineffectiveness.  (2nd state pet., at 7-10; 1st State Pet., appendix 105 (declaration by state appellate and habeas counsel as to that counsel's failure to timely investigate and present claims); 1st State Petition, at 310-11).

**E.    Conclusion**

For the foregoing reasons, the Court should review all claims on their merits, section 2254's standard for review of claim has been met, and either relief should be granted based on the uncontested allegations, or discovery and a hearing ordered.

Dated: January 12, 2015                    Respectfully submitted,


___s/_____
JOHN R GRELE, ESQ.
Counsel for Petitioner Jose A. Rodrigues